1. Appellees are state actors during primary elections under both the Exclusive Public Function which has been delegated exclusively to major political parties in Pennsylvania as opposed to mere political bodies. Every time that a party puts together a slate of candidates for the primary election, the party, whether Republican or Democrat, is engaged in state action? I didn't hear the first part of your question. I'm waiting for you, Your Honor. I apologize. Every time that a party – I got up this morning. I'm from New Jersey so we don't elect judges. You have a hot election coming up. We do, yes. Yes, you do. But it's not judges. No, it's not. What I saw this morning is a slate of candidates of judges. Yes. And it must have been about 10. Yes. And I saw both, the Democratic Party and the Republican Party on television. I assume those parties were endorsing those candidates. Yes, there were probably – I think they were probably endorsed candidates. But I didn't think for a second that the parties were engaged in political activity. Well, political activity, yes, but that they were engaged in state action, or that the state was supporting that activity. I would agree that there's a distinction between an endorsed candidate. The process of endorsement is certainly an internal party matter. Right. They – nothing in statute requires them to have an endorsement. It's really the question I was asking. And certainly an endorsement is a valuable tool for the political elites within the party to advance candidates of their choosing. So that alone doesn't get you state action? Pardon me? That alone doesn't get you state action? Yeah. Endorsement. We are not arguing – What about – We're arguing the next case. We're on the other side of the line that Valenti drew. Excuse me. What about the selection of poll watchers? Exactly. Is that an internal part of – That is not internal. That is cloaked, clearly, in state authority. Is there a statute that says that you can – that governs the selection of – as distinguished from committee men? Yes, there is, Your Honor.       I'm not a candidate. I'm not a candidate. I'm not a candidate. I'm not a candidate. I'm not a candidate. I can get that for you in my rebuttal. But there is – political parties are authorized to appoint – as well as any candidate to appoint poll watchers. And they give them a poll watcher certificate. Well, isn't authorized different than making it state action? They appoint. Pardon me? I mean, just the fact that they're authorized to do it, does that make it state action? It does make it state action when the individual is there by virtue of a poll watcher certificate. They are cloaked with state authority. That's what the court in T.R.A.C. – I think I'm pronouncing that properly – T.R.A.C. v. Jordan. That's why the poll watchers who essentially assaulted another poll watcher was deemed to have been a state actor because they were there by virtue of state authority under a poll watcher certificate. And that happened in this case as well, Your Honor, because – They were certified in this case? Yes. It's a blue certificate that the Board of Elections hands out to all the political parties and the candidates, and then they are given to their poll watchers. And under T.R.A.C., the T.R.A.C. court in the Eastern District – But I thought poll watchers aren't allowed to advocate for candidates. Isn't it a function of a poll watcher to monitor the judges of elections at the local polling place to make sure that the election is conducted in a clean and even-handed fashion? That's true, Your Honor. But that is only – obviously, when they're in the poll serving under that duty, they can't advocate candidates inside the poll. But they very often go outside and do advocate after the fact and before the fact. But wait a minute, then. The poll watcher – I guess what I'm trying to get you to clarify for me is, is my understanding correct that there's a distinction between someone engaged in political advocacy, whether it be an elected committee man or committee woman, who is typically the person seen outside the polling place who, as the voters are walking in, approaches them and advocates, either by handing slate cards or wearing a button, et cetera, et cetera. That's one type of person. Yes, it is. And that's in stark contrast to the person who gets a poll watcher certificate who is in the room monitoring the election to make sure it's a clean election. Those people are strictly prohibited from engaging in political advocacy in that room. While they are in the room. But they often do both functions when you're outside the poll. Committee members very often, Your Honor, are both poll watchers and they go into the polling place at the close – But they're wearing two different – they're wearing very different hats. Yes, they are wearing different hats. Because you can be a committee person advocating for your candidates and then right before the polls close they go in with the poll watcher certificate to watch the vote. So your client was outside advocating for her two unendorsed candidates, correct? Well, she would have liked to, but for the threat she received the night before from appellees that her conduct had essentially triggered a police investigation that they were looking for. Why are the people who are out in front handing out slate cards, wearing buttons, telling them to vote for their mother or their cousin, why are they state activists? We're arguing – we're arguing that – May I finish my question, please? Sure. Why are they not citizens engaged in classic private First Amendment conduct, i.e. advocating for the election of their favorites? Well, we would agree that they are, Your Honor. They are. And it's the suppression – our argument is that appellees who are – to whom the Commonwealth has delegated the authority to select a name in a primary election to be placed on the general election ballot, that they are the state actors and that – and very frankly, under statute, it is the appellees, the leader of the party who speaks for the party. There's a very close nexus between the delegation of authority to the major political parties and appellees who speak for the parties. So when appellees suppress – attempted and, in fact, did suppress Milly Max's speech, she has that First Amendment right. How did they suppress her speech? She was free to say whatever she wanted. In fact, as I read the rules of the Lancaster County Committee, handing out slate cards or otherwise supporting unendorsed candidates was not even a removable offense under the party's own rules. Correct, Your Honor. So why didn't she send a letter or say to the chairman, buzz off, thank you for your and, you know, I really am supporting these two candidates. And if you don't like it, why don't you run one of your candidates against me in the next election for committee woman? We would argue, Your Honor, and we are advocating that it's – the appellees were the ones that instituted the intimidation tactics, not Milly Max. And she was intimidated by it. The idea that – Any time your boss tells you to cut something out, you're intimidated, but that doesn't make it state action. I mean, why – What is – what is the state function in a party saying, we want to be cohesive, we want to be unified, and we want you to follow the candidates, support the candidates that we as a team endorse? And you don't always win. You know, sometimes the people you want get endorsed, sometimes the people you want don't get endorsed. But we're a team and we need to follow that or else we're not much of an organization. Where's the state action in all of that? The state action, Your Honor, is that the Commonwealth of Pennsylvania does not have to hold a primary election. They can select any method they deem appropriate to select the names which will appear on the general election ballot. The state action is the delegation of authority to determine who shall appear on the general election ballot to the appellees. Wait a minute. Because the voters determine that, don't they? No, they don't have – no. The Commonwealth of Pennsylvania does not have to hold a primary election. They have to hold a general election because – Yes, I held that, in fact. Yes, you did, Your Honor. Involving the death of Senator Hines. Correct, Your Honor. And it's – Yes, but that – but what you can do – what they have to do there is so different from – you're conflating the fact that they have authority to put the primary candidates in from the action that Judge Hardiman asked you about. And you can't say because you're a state actor in X, you're also a state actor as to Y. But they're a state actor in the process of selecting the name, which will be on the general election ballot, is a delegated authority from the Commonwealth to the party. That's not the process. Yes. It's just the doing. Doesn't the election at the primary determine who gets on the general election ballot? Yes, it is. And part of the election process is the right of free speech. And if – but for the election process, Milly Max's speech couldn't have been impaired. You don't have a right of free speech unless it's a state actor. I'm aware of that, Your Honor. State actors – I mean, you have a right of free speech, but you can't – the Constitution doesn't. But the appellees are exercising – the appellees have been granted the authority, the entire party, not just one faction of the party through their endorsement mechanism, but the entire party selects the party's nominees for the general election ballot. They will. And that is a delegation of state authority cloaked in state authority rising to state action. I'm sorry. You said that – Otherwise, they could exclude blacks from the primary election process. I missed the point that you were making. You said that the state, through its various regulations, authorizes a party to select the nominees for the primary election. Yes, Your Honor. Is that what you said? Yes, Your Honor. Yeah. But that's not state action. It is – Well, you said before it wasn't state action. No. I misspoke there, Your Honor. The state action is the process and the selection of the general election candidate for the – Oh, general election. I said primary. For the party. I said for the primary election. Oh, no, no. When a party selects candidates and supports a group of individuals to run – That is not – For a primary, that's not. That is not. Now, those people go – That's the endorsement process. That's internal to the party. But those individuals go before the voters of the state of Pennsylvania, do they not? Yes, they do. And Millie Max could have added any number of candidates to run alongside with those that were selected by the party, could she not? Correct. But the party's action in intimidating Millie the night before the election and on election day actually suppressed her speech. She was frightened. She thought the police were out after her. Let me give you that for the purpose of argument. I'm still trying to get to how the party was engaged in state action simply because it put together a list of candidates. No. We're not – I'm not – For the primary, who are then voted upon at the general election? We are not arguing that the putting together of the endorsement list is state action. Our argument is broader than that, slightly broader than that, is that the fact that they have been given the opportunity, delegated by the state, to select the names for the process is state action, including the poll watchers, and implicit in the decision of the party, implicit in the decision of the state to delegate this to the entire party voters is the free speech conduct. And that entire is wrapped up in the cloak and authority of state action. Political speech and the two things that you primarily point to are a phone call that she got where she was somewhat threatened with a state investigation of her license plate. Yes. And then she got a letter after the primary. Yeah, so – I understand. But those two incidents you could hardly say were done by the state of Pennsylvania. Those were individual members of the party. They were done pursuant to the delegation – without the delegation of authority of the selection of the general election candidates through a primary election process, none of this could have happened. I see. And more importantly, there's further state action down the road here, Your Honors, because the winner of the primary election, presumably through full free First Amendment right, the state actors then place that on the general election ballot. That is the something more test that the United States Supreme Court held in Lugar. There's – we're not just – they're not just operating under state statute. Mr. Rossi, you have five minutes for rebuttal. Thank you, Your Honor. And your red light's on, so thank you. My function here is to look at the clock, which is not – has not been working for days. Erica, would you make sure that somebody takes a look at the clock in this room? Thanks. Sorry. Good morning. May it please the Court. My name is Kevin French. I'm an attorney with the law firm of Hartman Underhill and Brubaker in Lancaster. It's an honor to be here before you today. It's an honor to have you. I represent the Appalese, Mr. David Duhmeier, who's the former chairman of the Republican Committee of Lancaster County. Mr. Andrew Heath is the former executive director of the committee, the committee itself, and then also a somewhat unique and unusual defendant in this case, the Republican Headquarters, which is a single-purpose, nonprofit corporation that owns the real estate and building where the Republican Committee of Lancaster County has its headquarters. They were brought into the litigation when plaintiff amended their complaint. Do the Texas cases, the Allwright and Terry cases, cut against you where the party itself was found to be engaged in state action? No, and I can explain why. Those were, Curt, to the white primary cases. The Jim Crow cases. I'm sorry. We call them the Jim Crow cases. Jim Crow cases. There was a series of cases and a battle going on between the state of Texas and the Supreme Court. And there was a lot of history there. We have Smith v. Allwright, which is the 1944 case, a lot of history. And then Terry v. Adams, 1953. In Texas, the Texas legislature had passed a statute establishing the qualifications of voters and, more importantly, excluding African Americans in violation of the 15th Amendment from participating in a primary election. Supreme Court in Smith v. Allwright. In fact, there had been a case before that. Was it the statute that excluded African Americans? It was the statute. Or was it the party that excluded them? Well, it was initially the statute. And when the Supreme Court said, no, that's a violation of their constitutional rights, the Texas legislature said, well, then we're going to move it to the Democratic Party and we're going to give the party the authority to determine who may participate in the primary. So they tried to do an end-runner on the Supreme Court decision by delegating a state function to the party. They clearly delegated a state function. So now you have a party making the decision regarding qualifications as to who may vote in a primary election. That battle continued. It didn't stop with the Smith v. Allwright case, and it went back to the Supreme Court, which resulted in the 1953 Terry v. Adams cases. Those are clearly distinguishable from this because in that case, the state had delegated to a political party its authority to determine who would appear, who would be qualified to vote or not vote in a primary election. Does it not do so here where the state delegates to a party who may be placed on a ballot for the primary? Well, that's really the crux of the argument here and where we take great issue with the position by appellant because under the Pennsylvania Election Code, there is no delegation to a private political organization, any authority as to who may appear on either the primary ballot or on the general election ballot. And let me explain that. You heard Mr. Rossi say repeatedly to you that the state had delegated this authority. Through the primary election, who may appear on the general election ballot? That is the fundamental premise of the appellant's argument, and that is simply incorrect. The Republican Committee of Lancaster County has no authority, has no legal role in connection with the primary election. The persons who have the authority are the registered voters of the recognized majority parties in Pennsylvania. You have the authority to endorse people. We have the authority to endorse. Which certainly gives them an upper hand in winning the primary. We hope so. Unless your party is in great disrepute, in which case I suppose. But that's the whole point of the endorsement process. The endorsement process, as Mr. Rossi has acknowledged, is a purely voluntary, internal, private process. It carries no weight in the eyes of the law. It confers no special benefits on the candidates whatsoever. You draw no authority from the state to put together a slate of candidates that are placed in the primary election. That is correct. For voters to consider. The way a person gets on the primary and appears on the ballot is individuals in Pennsylvania self-designate themselves when they register to vote. I'm going to register as a Republican. I'm going to register as a Democrat. I'm going to register as an independent. Pennsylvania has a closed primary system. It's the registered voters who make the decision. That state delegation. We've been through a number of briefs in this case. And I've been trying to understand Mr. Rossi's link between the Republican committee as a private political organization and this delegation of power. And it wasn't until the very last brief that Mr. Rossi filed in this matter that I think he actually stated it correctly. And here's on page 28 of the brief where he says, the election code clearly delegates the state sovereign. Excuse me. When you say the gray brief. It's the reply brief. Okay. Go ahead. It was filed on behalf of appellees. I'm sorry to interrupt, but I wanted to follow you. I appreciate that. And it's page 28, Your Honors. And it's the last paragraph. It says, the election code clearly delegates the state sovereign authority to determine which candidates should be placed upon the state's general election ballot to the political parties, which is not correct. It's not to the political parties. Here's where it is correct. And that right is exercised by the entire party electorate in the primary election regulated and paid for by the Commonwealth. And he goes on to say, which is the correct logical conclusion of his theory, the entire party electorate, that is every voter who participates, registered voter in the primary election, is acting in exercise of power delegated from the Commonwealth. That's where the power is delegated. It's delegated to the registered voters, not to the parties and certainly not to the Republican Committee, which is a private political organization. Maybe you can clarify something. Was the contention made that the Republican Party was engaged in state action with respect to the primary or the primary and subsequent conduct, meaning the general election? My understanding is that the allegation in the litigation is that there were three incidents in the complaint, an amended complaint, that appellant claims there was state action. And Mr. Heath made his phone call and was discussing this question about whether Ms. Max had been out doing certain things the following day with poll workers and then Mr. Dumeier's letter. As I understand it, they sort of generally say any action by the organization, the private political organization. You didn't answer Judge Fuente's question, which was, were you talking about the primary or was it the primary? Was the contention, is the contention being made that the party was engaged in state action with respect to the primary or was it with respect to conduct that occurred later, meaning the intervening conduct? My understanding is it's the contention, the contention is it's with respect to the primary, Your Honor. Yeah, well, so what relevance does that letter have that was sent sometime after the primary election? We would submit it has no relevance under the appellant's theory of the case. And what about the general election? I thought we were just considering the primary election and that phone call that was made. And that's what I believe is being presented to this court. I'm not aware of any contention by the appellant that the Republican Committee of Lancaster County or its officials are state actors in any fashion in connection with the general election. Well, that's what I thought. Maybe Mr. Rossi can help. And in fact, I think they concede that during the general election under the bylaws of the committee, if there had been active and hostile open opposition to endorse candidates of the party, then the committee could take some kind of action. Am I correct in understanding? I was a little surprised that this conduct in supporting unendorsed candidates did not appear by my reading to be an offense that would warrant Ms. Max's termination from the party, right? If I read it correctly, it was any committee person who advocates for another party is removable. In connection with the general election. Yes, her advocacy of speech, what have you, conduct during the primary would not result in any kind of censure, discipline, removal. There was no adverse action that could be taken. It did seem inappropriate. I mean, this may not mean that you lose the appeal, but it did seem inappropriate then that people would sort of put the boot on her to try to quell her First Amendment speech, right? I mean, technically her First Amendment speech in supporting these unendorsed candidates didn't directly violate the party rule. There's no question that it didn't directly violate the party rule at that time. Now, the letters in the context of if you feel and continue to feel that you need to oppose the committee's endorsed candidates in the general election, you could run into a problem. Well, I thought that letter said basically stop what you're doing or leave. And to which I thought she could have sent a letter or called and said, well, I've read the committee rules and I'm going to continue in the primary to do what I want to do in the primary. And that's exactly what Judge Giles raised when we had oral argument, that she could have certainly done that. If you were to say that there was state action, Mr. Heath's phone call to Ms. Max would be a problem, wouldn't it? I don't believe that it would be a problem, Your Honor. That was a bit of a ruse to find out, to get from her what she had done and then to intimidate her with the background check or check of her license. Well, let's talk about that for a moment because I think it's very significant in light of the Supreme Court's Twombly decision and the May decision in Ashcroft versus Iqbal, where they revisited the pleading requirements. And in both Twombly and Iqbal, what they did was they pushed away the legal conclusion and said, look, let's look at the factual allegations. And there has to be something more. It has to rise to the level of plausibility, not just plausibility. In Twombly, you had parallel conduct. The Supreme Court said it's consistent with anti-competitive conduct, but it's also as reasonably likely that it's consistent with just unchoreographed free market behavior. In Iqbal, they said with respect to former FBI Director Mueller's alleged intent, discriminatory intent, that it was equally, it could be interpreted and understood, and it could in fact be more reasonably understood, as simply him exercising lawful powers of detention following the 9-11 attacks. And I would submit that under both Twombly and under Iqbal in this case, the court should look at the discussion that took place between Mr. Heath and Ms. Max, and that's consistent with the party performing an internal investigation and Mr. Heath just simply calling Ms. Max's bluff. Now, who, as I understand the rules in Pennsylvania, Ms. Max, as a committee woman, is elected by the electors, right? That is correct, at the primary election. And nobody in the party would have the authority to remove her, isn't that right? Except pursuant to the bylaws, Your Honor. Of the party? Of the committee, which is separate from the party. They are not one and the same. Well, you mean if the statute provides, does the statute provide that the electors elect the committee woman? The statute, the governing statute under the election code provides two means for, first of all, let's step back for a moment. County committees are not required under the Pennsylvania election code. They are permissive. It's an option. The second point is, once the committee is organized, membership in the committee can be determined by two methods. The law says you can either elect members of the committee during a primary election or the alternative method provided under the statute is appointment. Either one. Appointed by whom? By whoever the committee decides is going to conduct powers of appointment. Okay, so that the chairperson, chairman I guess he was, did have the authority to remove her. There's a question mark behind that. I believe it would have had to have been consistent with the bylaws of the committee. Once the person's on the committee, I don't think that the chairman could just arbitrarily remove without some type of cause. Well, what would stop that? What would stop that? She could refuse to agree with his decision. And she'd just say, she'd say, I'm still the committee woman? She'd still say, I'm still the committee woman. I bet you had instances in which, well, you had instances in which two people claimed to be senator. So I guess you would have an instance in which two people claimed to be a committee person. One previously elected and one de-elected or removed by the party chairman. What happens then? I'm not aware of a circumstance where that's occurred, so I'm not able to address that. But it's not by statute. It would not be by statute. It would be simply by bylaw. There is very little in the way of the statute that says what a county committee must do or should not do. The requirements are relatively simple. You have to file your bylaws with the county election board, and you also have to file financial statements or financial disclosure statements with the state ethics commission. Those are the simple requirements. I wanted to conclude by just saying, under the Third Circuit precedent, starting with the Fox Roth trial up through Leshko, this Court has made it clear that to find state action, this conduct has to be traced back to a state actor, the state has to be responsible in some fashion. And there is absolutely no allegation in this case that there was any kind of state involvement either. Compulsion, entanglement, encouragement with respect to any of the incidents alleged that give rise to Ms. Max's claims in this case. Thank you, Your Honor. If you may, please, the Court. Ms. Max is not an attorney. She didn't know what the bylaws said at the time. So when the threat was made to her that you either shut up or lose your committee's position, that was a real threat to her on the night before the primary election, and appellees know it. And the fact that, frankly, this was probably they weren't tracing the license plate, goes to the intent of appellees to suppress her speech, and to suppress her speech because they were frightened about what she was saying to the voters would impact the election. Is that really the essence of your damage claim? Yes, Your Honor. That all seems true. Why would they have called her, right, except to try to stop her from doing what she was trying to do? But, I mean, you know, if a union worker, you know, wants to go oppose card check legislation, and the shop steward calls and says, hey, buddy, you know, we want this piece of legislation, cut it out. I mean, so now the unions are state actors, too? But they're not operating, Your Honor, under a delegated state authority whereby the election process selects names for a general election ballot. But operating under a statute isn't enough. There has to be some further state action, and in this case the further state action is that the state officials take the names from the primary election and place it on the general election ballot. That's the joint participant test. There is further action here. But the state doesn't control who, excuse me, the party in no way controls who wins the primary election. It's not unheard of for unendorsed candidates to not win the primary. That happens all the time. And that's what they were frightened of here. And the way unendorsed candidates lose is by the First Amendment and by speech. And by suppressing that speech, they are trying to preserve the one faction's preference over another faction's preference within the party. That's why the delegation of authority to the entire party, and by the way, Dave Dumeier. There's nothing wrong with that, is there? There's nothing wrong with supporting one slate of candidates and not supporting another. But under Section 2837, this suppression of speech came from the party who essentially is authorized to speak for the party, the very entity to which the primary election was delegated to. Can you pick up on Mr. French's point that you really should be able to trace this entire incident back and the party's conduct back to some state actor? We, the state actor here, we trace it through the fact that... I would even amplify and say state legislation. Well, clearly, Your Honor, the state hasn't mandated that Andrew Heath call Millie Maxx up the night before the election to suppress her speech. But that suppression of speech impacts the primary election and the votes, which is the entire delegated authority from the Commonwealth to the party. I understand that, but again, going back to tracing back the conduct of these individuals, the defendants, back to some state actor or state legislation that authorized what they did. Yeah, but certainly when political parties were excluding plaques from having an impact on the general election, on the primary election process, the state, in some of those cases, the state hadn't mandated that. If you're going to allow the... And the state's giving the party the power to suppress speech here to impact the primary election. You started by saying that she didn't know the law. You started by saying she's not a lawyer, which implied that if she had understood her rights under the bylaws, she would not have suppressed her speech because there was really no sanction against her, right? Don't you admit that she could, next spring, she's still a committee woman, right? Yes, she is. Next spring, she can go out and support whoever she wants in the primary. It certainly may not make her cohorts in the committee happy, but under the bylaws as currently written, there's no sanction that can befall her. And that is true, which actually amplifies... Where's the suppression? The suppression is in the intimidation, Your Honor, and the suppression is in her reputation as a good committee woman being sullied by appellees in order to suppress speech. Every time a member of an organization bucks the power structure of that organization, they run the risk of alienating the majority and the leadership of that organization. But the leaders in this case don't have the right in that context in the primary election delegated to them by the Commonwealth to attempt to suppress speech during a primary election. That's the line Valenti drew. In the words of the Valenti court, they refused to move the state action line back one place to the endorsement. Here we're arguing, we're not asking the line to be moved back to the endorsement meeting. The line is already at the primary election because the primary election determines who shall end up on the general election ballot.